CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

BENJAMIN K. KLEINMAN (NYBN 5358189)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
Benjamin.kleinman2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENDELL TURNER,<br><br>Defendant. | Case No. 4:26-cr-00202-YGR<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: September 10, 2026<br>Hearing Time: 9:00 a.m.<br>Courtroom: 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

On January 28, 2026, an Oakland Police Department ("OPD") officer initiated a traffic stop of the defendant, Kendell Turner, for running a red light. PSR ¶ 6. Following the initiation of the traffic stop, the defendant, who was the sole occupant, got out of his car and tried to walk away. PSR ¶ 7. The officer attempted to stop the defendant and saw that he was wearing a bulletproof vest and appeared visibly intoxicated. PSR ¶ 8. OPD also observed an open container of alcohol in the backseat of the defendant's car. PSR ¶ 9. The defendant threatened OPD officers and admitted having firearms in his car. *See id.* Ultimately, OPD recovered multiple firearms and ammunition from the defendant's car, including two rifles, one of which was a loaded Bushmaster rifle equipped with a scope and blue laser, and numerous

rounds of ammunition of different calibers and several magazines. *See id.*

As part of a surge in federal firearm enforcement measures in Oakland and the East Bay, on April 30, 2026, a grand jury indicted the defendant for one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). PSR ¶ 1. Federal agents arrested the defendant on May 7, 2026, and he pleaded guilty on June 25, 2026. PSR ¶ 2. For the reasons set forth below, the government recommends that the Court sentence the defendant to 18 months' imprisonment, three years supervised release, a $100 special assessment, and forfeiture.

## II. OFFENSE CONDUCT

### A. The Illegal Possession of Firearms Poses an Unacceptable Danger to Oakland and Surrounding Communities

The defendant's conduct in this case did not occur in a vacuum. Rather his illegal possession of multiple firearms helps to fuel the wave of gun violence that is and has been ravaging Oakland. The proliferation of illegal firearms amplifies the issue of violent crime, as robberies, burglaries, domestic violence incidents, or even routine altercations like road rage incidents, carry the potential to become deadly when the participants are armed. Although the rate of shootings has fallen from its peak in 2023, the number of shootings and gun-related murders remains unacceptably high.

Harrowing statistics underscore the damage illegal firearms inflict on Oakland. In 2025, the city suffered 67 homicides at a rate of 15 homicides per 100,000 residents. This homicide rate is *five times* that of San Francisco, and substantially higher than neighboring cities in Berkeley and San Leandro.



| City | 2025 Population | Homicides 2025 | Homicides (per 100k) |
|---|---|---|---|
| *Oakland* | *444,196* | *67* | *15* |
| San Francisco | 826,079 | 28 | 3 |
| Los Angeles | 3,874,000 | 230 | 6 |
| Berkeley | 123,195 | 1 | 0.8 |
| San Leandro | 86,587 | 3 | 3.5 |
| San Jose | 993,000 | 24 | 2.4 |

It is not a mystery why Oakland has suffered so many more homicides than its neighbors. It is because of illegal firearms. Of the 67 homicides in 2025, 65 of them were committed with a firearm. And the problem is not limited to murders. There were 350 individuals who were shot in 2025, many suffering gruesome injuries with lifelong impacts. 2025 also saw 1,674 robberies and 2,950 aggravated assaults in 2025. As with homicides, Oakland suffers robbery and aggravated assaults at a much higher rate when compared with its neighbors. A substantial portion of these violent crimes also involved firearms. These violent confrontations, when mixed with illegally possessed firearms, all too often escalate into a shooting or a murder.

Nor has the problem abated in 2026. Through only the first quarter of 2026, Oakland had already suffered 13 homicides, 374 robberies (102 involving firearms), 588 aggravated assaults, and 53 assaults with a firearm (including shootings and injuries by firearms). These statistics are staggering.

This is also not a problem that is limited to people already involved in criminal activity. Every resident of Oakland is made less safe by these illegal guns. Innocent bystanders uninvolved in criminal activity have been maimed and killed. For example, in 2021, an almost two-year old boy was shot and killed in his car seat in his family vehicle when gang members engaged in a shootout on I-880 in Oakland. And in March 2026, an innocent 33-year-old middle school teacher was murdered at a mass shooting at a night club in Oakland. Additionally, two other defendants (not Turner) charged in the violent crime reduction initiative are charged with illegally possessing ammunition that was fired during a shooting in a parking lot near two schools in Oakland. *See United States v. Jamonn Blincoe*, 4:26-cr-00270-JST; *United States v. Kawan Hardy*, 4:26-cr-00271.

These tragedies and grim statistics are astounding and unacceptable. The proliferation of illegal firearms is a direct threat to the safety of the community. The defendant's offense is grave and must be

set against this context of a culture of violence in Oakland that must be disrupted.

## III. THE SENTENCING GUIDELINES AND CRIMINAL HISTORY

The government agrees with Probation's calculation of the sentencing Guidelines in this case, which are set forth below and in the Plea Agreement. PSR ¶¶ 14-24.

| **Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm / Ammunition** | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base Offense Level:<br>(The offense involved a semiautomatic firearm that is capable of accepting a large-capacity magazine, and the defendant was a prohibited person at the time of the offense). | § 2K2.1(a)(4)(B) | 20 |
| Adjusted Offense Level | | 20 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| Total offense level | | 17 |

The government also agrees with Probation's calculation of the defendant's criminal history, which places him in Criminal History Category IV. PSR ¶ 37. The defendant's significant criminal history includes multiple convictions for felon in possession of firearms, domestic violence (felony and misdemeanor), and reckless driving. PSR ¶¶ 27-35. Therefore, the defendant's advisory guideline range is 37 to 46 months' imprisonment.

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need to avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct.

**B. The Government's Recommended Sentence**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 18 months' imprisonment to be followed by a three-year term of supervised release. This sentence accounts for a 19-month downward variance from the advisory guideline range. *Id.* Consistent with 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide deterrence, but also to account for relevant mitigating factors.

As discussed above, gun violence has plagued Oakland for far too long. In an effort to tackle this problem, beginning in March 2026, federal and local law enforcement coordinated efforts in a surge of federal firearm enforcement measures in Oakland and the East Bay that resulted in the seizure of 76 illegally possessed firearms and charges against 51 defendants. Turner is one of those defendants. The government's recommended sentence in this case therefore plays a key role in its efforts to disrupt the cycle of gun violence in the East Bay by deterring Turner from yet again possessing dangerous guns following his release (this will be his third firearms related conviction), and others like Turner who continue to threaten the safety of the East Bay community by illegally possessing firearms. This, in turn, reflects the need for the sentence to promote respect for the law and afford general deterrence. *See* U.S.S.G. § 3553(a)(1), (a)(2)(A)–(B).

In addition, for characteristics of the defendant, specific deterrence, and to protect the public from further crimes of the defendant, it is notable that Turner has a lengthy criminal history. A significant sentence in this case followed by three years of supervised release will hopefully put an end to Turner's dangerous criminal misconduct.

On the other hand, some sentencing factors support a more lenient sentence. The history and characteristics of Turner, for example, demonstrate that he has faced considerable hardships throughout his life. PSR at Sentencing Recommendation. Both of the defendant's parents struggled with substance abuse, and his father specifically struggled with alcohol and crack-cocaine. PSR ¶ 48. The defendant also witnessed domestic violence and recalled that his neighborhood growing up (East Oakland) was plagued by "criminal activity and gun violence." The defendant also stated that he "endured the deaths

of people close to him due to gun violence . . . ." PSR ¶ 50. At the time of the offense, the defendant was living in his car without stable housing; the defendant also struggles with substance abuse, including alcohol. PSR ¶¶ 45; 56.

Also in the defendant's favor is that after his arrest, he took early and full responsibility for his criminal misconduct. The government is optimistic that this case will serve as an inflection point for Turner; he is now just two months shy of 40 years old. He cannot continue to engage in behavior that threatens the public and that will result in his continued incarceration. Rather than being a threat to the community, the government is hopeful that its recommended sentence, which includes three years of supervised release after his prison term, will be the impetus for Turner to transform himself into a productive member of the community.

## V. CONCLUSION

For the reasons stated above, the government recommends that the Court sentence the defendant to 18 months' imprisonment, three years' supervised release, a $100 special assessment, and forfeiture.

DATED: September 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Benjamin K. Kleinman*
BENJAMIN K. KLEINMAN
Assistant United States Attorney